Case number 11-3559 Panhandle Eastern Pipeline v. Brian Hamer. And if both attorneys that are going to present oral argument would step up and identify yourselves for the record. I'm Assistant Attorney General Laurel Bunder for the Director of the Department. Good morning. Good morning. Craig Fields, Marks & Forster on behalf of Craig Fields. I'm sorry, Mr. Fields? Craig Fields, correct. Okay, good morning to you. All right, we will begin. You may sit down, Mr. Fields. I was wondering if you may proceed. And I'd like to reserve about four minutes of the time. Sure. The Director and the Department, as the appellants here, are asking the court to reinstate the Director's administrative decision denying a certain refund claims for the tax years that are at issue, 1997 through 2000. There are two issues here. And I'd like to state them both and then I'll go into each of them in more detail. The main issue involves the statutory construction of Section 304D2 of the Illinois Income Tax Act. And so for pipeline companies like the plaintiffs, D2 apportions business income to Illinois using a fraction. The numerator is the revenue miles of the person in this state, and the denominator is the revenue miles of the person everywhere. The statutory construction question is whether. As the Director found, what the parties are calling flow-through miles are revenue miles in this state. By flow-through miles, the parties are referring to miles that's traveled by the natural gas within Illinois as part of interstate trips that neither start nor end in Illinois. And then the second question is accepting the Director's construction that the flow-through miles belong in the 304D2 numerator, that they are revenue miles in Illinois, would that result in a Commerce Clause violation as the taxpayers claimed? So to turn to the statutory construction question, are the flow-through miles revenue miles in this state? And I'd say that the plain language of the statute begins and ends that question. And why is the flow-through miles different from the fly-over miles, as they said in Northwestern? The Northwestern case wasn't focused on the statutory definition. The Northwest Airlines case came to the conclusion that if you did include the fly-over miles, then that would pose a constitutional problem, that there would be a lack of a constitutional nexus. And I do intend to talk about that. That was really more of a Commerce Clause lack of nexus issue. But on the actual statutory construction question, were the fly-over miles in this state? Actually, Northwest is instructive because they rejected this type of linguistic parsing that the taxpayer wants to put forth here. The Northwest court, in the Northwest case, the airline was saying, well, the fly-over miles aren't really in this state. They're over this state. And the court rejected that type of parsing of the word and said, well, we're not going to get anywhere with in versus over. The language is broad enough. But then the court went on to say, in that case, that would pose a constitutional problem that is not the case here. So just as to the statutory construction question, and we're just looking at the plain meaning of in this state, the Department is offering a very logical and straightforward application, and it's the taxpayers that are reading in this limiting condition that's not there. They read the statute as if it said miles that are in the state, providing that the guest's journey begins or ends in the state. And, of course, nothing like that is in the statute, and courts don't read in these type of limiting conditions. And they put forward this idea that in doesn't mean through, but regardless of whether the guest ultimately goes through Illinois, there's a part of its trip for which it is in Illinois. To move through the state, there's also activity that had to be involved. It wouldn't just get through the pipeline without some help from the pipeline companies. Absolutely, and that illustrates the significant connections that their in-state operations have to Illinois. Without their compressor stations in Illinois, they couldn't be moving the gas through the state. So looking at the plane language, we have the revenue... What about those airplanes flying over? Could they fly over without any help from anyone or anything? There's no connection to the in-state operations between the flyover miles. There's a connection, but is there need of assistance from anyone or anything in order to safely traverse or travel over Illinois? Was there? No, those were the factors that the Northwest Airlines cart was looking at, that there really was no meaningful connection of any kind with Illinois in that case. There was no physical connection. There was no economic connection. Their activities just had nothing to do with Illinois, which is a very different situation and is why there's a substantial nexus here where you have all of these significant connections. They're owning and operating of the compressor stations, which enable the gas to flow. They own land. They have easements. They have significant workforces. They have these significant... They're subject to a significant regulatory network. So all of these substantial connections that they have with Illinois, which pertain in exactly the same way to gas that is traveling through Illinois or to gas that starts and stops in Illinois, all of those connections... Are the same. ...are the same, and they're all brought into play for all of their gas transportation activities, and that is why there is a substantial nexus here, and that is why there is no commerce clause problem. On the statutory construction issue, besides the plain language, the construction that the department is putting forth also fosters the purposes of the act, and that's... To tax. Yes. 100%. To result in 100% apportionment, and actually the Northwest Airlines Court, again, recognized that. They recognized that there was this legislative intent to avoid precisely these types of gaps because you would wind up with these nowhere miles that aren't taxed to any state because they still go in the denominator, but because they're not going in the numerator under the taxpayer's view, you'd have this gap, and the Northwest Airlines Court recognized that that is something to be avoided wherever possible, but the only exception being this constitutional problem of a lack of a nexus, which is not what we have here for the reasons that I've said. The trial... Go ahead. The trial court relied on this change in the statutes... Yes, and that's... ...and they're based on flow-through gas receipts, and the trial court said, well, since they set up this special section, this amendment, and specifically mentioned this situation, and that's an indication... And that's what I'd like to talk about next, because I think that's the third part of the statutory construction question, the plain language, the purposes, favor the department's construction, and then the final piece is, well, what about these amendments? What do we make of these amendments, and do they affect the construction here? And the answer to that is that the taxpayers relied on these amendments that created a new section 304D3, and that sets forth the apportionment formula going forward in the future for, well, now the past, but the future of that, for years ending after December 31st, 2008. And the circuit court, the taxpayers said, well, look, those amendments, they changed the law, so the old statute must have meant something different. The circuit court had the same view, and that seemed to be the whole basis for the circuit court's decision. Nothing in the amendments shows a legislative intent to newly tax something that was not taxed before under old 304D2. And the amendments are discussed at length in the brief. There's two of them that followed close on each other. The legislature was tinkering. What the amendments do is change the law. They do change the law, but they don't... Yeah, you just said they didn't mean to. But they don't change the law in the way that the taxpayers suggested. What the amendments do is they scrapped the old revenue miles apportionment system. Right. They have a new language, terminology entirely different. Receipts, all receipts, and then gross receipts. Yes. They replaced it with a whole new apportionment system that's based on gross receipts. And that's basically the difference. And the changes that the taxpayer is pointing to are ancillary to making this change to a gross receipt system, and I'll talk more about that. When the legislature changed to the gross receipt system, it necessarily referred separately to intrastate trips and interstate trips, and that's the language that the taxpayer is focusing on. And the reason for that is because a gross receipt is not a geographic unit like a mile. So the legislature had to go on and explain in a little more detail what gross receipts it meant. And that's why they include those expressed references to intrastate and interstate trips. And then they give you a different computational rule for intrastate trips, do this for interstate trips, do this. So there's a two-part numerator now. The old revenue miles system under 304-D2 doesn't include any specific references to intrastate or interstate trips. It doesn't break them out. And it doesn't do that because there was no reason to do that. And that's because when you're looking at miles in this state, that's already a geographic measure. It's self-limiting, and it includes both the intrastate trips in Illinois and the Illinois component of interstate trips. So you're catching up pretty much the same things under each numerator. Well, is it a change or is it not a change then? It's a change to a gross receipt system, and then they actually include more specific references to interstate and intrastate travel. But they're not adding anything new. What they're not doing is newly including these flow-through trips in the numerator. The same idea of getting intrastate and the Illinois component of interstate activity is in both. They're using a little different wording, but they're using different wording so that the gross receipt system makes sense. They had to be a little more specific where when you're just talking about revenue miles in the state, you catch up pretty much the same thing. What was the point then of changing this? The point was to have a gross receipts-based system, which is now keeping track of different things. It's not based on revenue miles at all. So it is keeping track of different things entirely from the old standard? They're not to comply. Companies aren't keeping track of miles that are moving. They're keeping track of their receipts. And that had many advantages for the department and for the taxpayers because it's easier administratively for package delivery companies that start and stop a lot. It's hard to keep track of your weight along a route. Yes. It's more in line with how non-transportation companies are taxed actually because now there's just a sales factor for them. So this gross receipts measure is more similar to that. But what it is not doing is somehow including these flow-through interstate. It's not apportioning income from flow-through interstate trips for the first time when it wasn't done under 304-D2. That same type of thing was included, and it was included within the language of in this state, revenue miles in this state. It was all caught up within that. There's this notion out there that for apportionment purposes, you want to apportion 100% as much as possible so that everything is at least taxed for the portion of this business or activity that is in Illinois. But there's nothing that prohibits. Is there in a particular case where you won't always have this 100% apportionment? There's nothing that prohibits less than 100% apportionment? Yes. I mean, in some cases it actually ends up that way, doesn't it? I think in some cases it does end up that way because all of these things are systems and approximations to try to get at dividing a pie of revenue among the many states. So 100% apportionment is a goal. It's difficult to tell if that happens in actuality. All right. Well, what about the Commerce Clause? Yes. So with those three pieces of the statutory construction question, would there be any problem in construing the statute as the director has? And the answer is no. The Commerce Clause issue, there's, of course, this four-part test that's set forth in complete auto and that's discussed in the brief, and the taxpayers are only challenging two prongs of the test, the substantial nexus prong and the fair relation to services provided prong. And both of those are satisfied here. There's no constitutional problem. Here, looking at the substantial nexus prong, the records show that there were many significant connections between Illinois and the taxpayers' business income, excuse me, business activities that contribute to producing income. And those are all discussed in the brief. They own and operate these compressor stations without which they can't move the gas to the pipelines. They own land in Illinois for the compressor stations. They have easements for the pipelines. They employ staffs of Illinois workers. They're subject to extensive environmental regulation reporting. And these establish the substantial nexus to support imposing an Illinois income tax, and that should end the inquiry. And the taxpayer concedes that those are substantial, but they want to carve out this exception just for the activities involving the flow-through trips. And that type of exception, it doesn't exist. The flow-through trips, just like the other trips, have a substantial nexus to Illinois because the flow-through trips are a direct part of the taxpayers' operations in Illinois, and they're making direct use of all of these connections. They're making direct use of the Illinois infrastructure, the Illinois personnel. The regulatory connections are still related to the flow-through trips, just like the other trips. So all these connections. Not that this really would be in any way determinative, but what about other states in terms of their portioning taxes on flow-through miles? Are you familiar with any of the other states, the 49 other states? Well, they would all have their own methodology, and they could use one that's like Illinois's. They could use one that's different from Illinois's. And I think that we've been talking about the Northwest Airlines decision, but I think that that case, because it is involving this same statutory scheme and it is addressing the existence of this type of nexus, is very relevant here. And both sides cite the case. There, the court found an insufficient constitutional nexus between Illinois and flyover miles, where airlines are just traveling over Illinois but not landing or departing. And the court found that there's no nexus because the facts there showed that there was no meaningful connection between Illinois and flyover miles. And it's worth looking at the court's language. And what the court said was, flight plans for overflights are not filed with any Illinois state or municipal authorities. There are no voice communications with overflights. Such flights make no use of Illinois facilities, services, or employees. There's no physical contact between overflights in this state, nor any economic connection. We don't find it a mere possibility that an overflight will avail itself of services or facilities in the event of an unscheduled landing is enough to establish the nexus. And that's in significant contrast to the situation here, where the gas transportation activities, which is what we're looking at, for the flow-through trips, just like for the other trips, do make extensive use of Illinois facilities, services, employees. Were you talking about Northwest when you were just referring to that, or were you talking about a different? I'm talking about this court's decision in Northwest Airlines. Yeah, all right. You said United. Oh, did I? Yes, you did. My mistake. And there is a Supreme Court case, but in the United States. Yes. I'm just confused for a moment. No, no, I'm talking about this court's decision. Yeah, the Northwest case. All right. So all of those substantial connections, which come to bear for the flow-through miles, just like for trips that start and end in Illinois, establish that the substantial nexus is satisfied here. They do cite these two Supreme Court cases, United Airlines, Gold River Suite, and those are discussed in the briefs, but nothing in those cases helps them establish that there is a lack of a substantial nexus here. Am I doing okay on time? Well, I think you should sum it up. Wrap it up. So I'll move on to the last prong. The United States Supreme Court cases, they all involve, they don't address substantial nexus questions. They involve different types of taxes, which is significant, because you're not looking then at the connection between Illinois and income-producing activity, and they present different facts. With respect to the last prong, the fair apportionment prong requires a relation between the tax and the governmental services provided by the state. That's satisfied here when you look at the relevant United States Supreme Court authorities, because they are receiving, it's undisputed that they're receiving the benefits of these governmental services like police and fire protection, public roads, transit and education that make it easier to conduct business and have a better life, the use of state judicial systems. They don't dispute that they receive those, but they say, well, we paid for those because we paid income tax, and we didn't receive any additional services specific to the flow-through miles, but under the law and the relevant United States Supreme Court authorities, they don't need to receive any additional services specific to flow-through miles. The court's precedents, the United States Supreme Court precedents, is very clear that there's no quid pro quo relationship that exists between the specific activities and the governmental services, so they don't get that carve out. They rely on a case called American River Transport, but the basis of the appellate court's decision in that case was simply that this one portion of the taxpayer's fleet, these line tugboats, didn't receive any services from Illinois. They only received services from the federal government. Here, Illinois is providing services. So the second prong is satisfied as well, so there's no constitutional problem with the director's application. If there are no questions. Thank you. All right. Thank you. Mr. Fields. Please declare. Your Honors, the issue before the court today is whether the amounts received for the flow-through gas, the gas that does not originate or terminate in the state, but passes through Illinois, are included in the numerator of the revenue miles factor, whether those receipts are in this state. And the issue is not whether or not the companies are subject to tax. They acknowledge they're subject to tax. They have pipelines here. They have compressors here. The issue is the proper computation of that tax. If the legislature had to change the language to say within this state, would you still have an argument? I think we would, Your Honor. I think. Or through this state? Excuse me, Your Honor? Or if they changed the statute to say through this state, would you still have an argument? Seems like you're only basing it on in this state. The statutory construction argument is based, that is exactly right. Right, but they had changed it. They did. They changed it twice. They changed it first in 2007, and all of this is prospective only to provide that the numerator would be receipts that originate and terminate in the state and also a portion of the receipts from shipments of gas passing through, into, or out of this state. They specifically know how to say, when they want to get items that are passing through the state, the General Assembly knows how to say it, and they did say it in that first amendment, which was effective in 2007. And then they went further and amended Section 304D3 a second time and provided that it would go for portions of the gross receipts from shipments that originated in one state and terminated in another state. So the statutory construction argument ceases to exist after 2008, Your Honor. The language in the new statute is different than the previous language. One, the previous statute was revenue miles. The new statute is all receipts and gross receipts. I mean, it's a totally different formula. How do you get from a new formula to say that that means it was clarifying the old formula? Your Honor, I think if the old statute, which said revenue miles in the state, was sufficient to get- Revenue miles in the state. Correct. If that were sufficient to get the flow through miles, miles that flow through the state, then when the legislature amended the statute, they could have just said the numerator is the gross receipts in the state and then the denominator is the gross receipts everywhere. But they didn't do that. No, they actually used specific language, which they also could have done in the prior statute. Because what you're asking us to do is change the language from revenue miles in the state to revenue miles in the state where gas is delivered to or shipped from the state. You're asking us to incorporate or add words to the old statute, which we really can't do. Your Honor, I respectfully disagree with that. We're not asking to add words. We think in the state means exactly that, gas that originates in the state or terminates in the state. Well, then you're adding another word. You're saying gas that originates in the state. That's not in the statute. There's nothing like that in the statute. So you've given us more words that you want us to add. I mean, we can't do that. We cannot add words. Can we? No, we cannot add words, Your Honor. Well, you rely on Northwest significantly. True? We do rely on Northwest. That is one of the cases we rely on. We rely significantly also on the statutory amendments where the statute was amended to put through the state, which we believe shows a difference. And in Northwest, this Court held that review is de novo and that the tax, this is an imposition statute, not an exemption statute, and that, therefore, it would be construed, if there's doubt, in favor of the taxpayer. And in Northwest, the Court held that there was not a sufficient connection with those flyover miles with the state. Now, significantly, in that case, in the footnote of the state, the Court mentions that the statute, 304D, had been unchanged during that entire period. Since then, we now have the amendments that we discussed. But the Court held that there was not a sufficient connection and that those receipts would not be included. Do you agree with Ms. Blunder that the appellate court decision was really interpreting the language under the Commerce Clause and that was where the failure sort of came in? It's unclear. It appears that that might be where the Court was going. The Court talks about the statute and then talks about is there a sufficient nexus. Right. Isn't that a constitutional discussion? I mean, isn't that where that language is coming from, the four mandatory requirements to make certain that the Commerce Clause is not violated? That is from the complete auto test, yes, Your Honor. All right. Well, how can you suggest, going back to the statutes and the statutory language as opposed to the Commerce Clause question, the facts were sort of different in Northwest, weren't they? I mean, here in Illinois, you had these compressor stations, correct? That is correct. And the gas could not move through this state without assistance from the compressors decompressing? Is that the correct terminology? I'm not sure. Well, they had to do something. Compressors had to be used to move the gas. They had to move the gas through the state. You had numerous employees, these three different pipeline companies, had numerous employees on the ground working at these stations. I think only one was not functioning during a certain period of time. So, I mean, how do you compare the facts in this situation to those flyover versus flow through? Well, I think both are just passing through the state. Passing through? Well, I mean, in the Northwest case, they weren't passing through. Weren't they flying over? Well, I think the court said flying over, passing through, and it's all the same type thing. It's just starting and originating outside the state and terminating outside the state, I believe is what the court referred to. Okay. So I don't think that the fact that it was in the airspace as opposed to the ground space, that alone is a significant difference. I think both are just passing through the state and that under the way the statute reads, in this state, those would not be considered in this state. Now, Your Honor, you've mentioned about 100% apportionment. Isn't that the goal? That is the rule, right? That's the rule. That's the idea behind the tax. It is and it isn't, Your Honor, because the case that's referred to is the GTE case. And the GTE case involves the three-factor apportionment formula found in UDIPA, which is the Uniform Division of Income from the Tax Purposes Act, which was adopted by many states. And Illinois adopted that in 1967. And that provides a three-factor formula of equally weighted sales, property, and payroll behavior. Sales in the state over total sales, property, total property, and payroll in Illinois, or payroll. But the legislature, General Assembly, deviated from that with respect to pipeline companies. It provided that for these pipeline companies, they would use a single factor, a revenue miles factor. And so they have actually deviated from that basic statute that was the uniform statute. But this apportionment idea of taxing a business that does business in multiple states is to attempt to apportion to each company that portion of that company's business that they conduct in a particular state. Isn't that kind of the purpose behind it? It's the purpose if everyone adopts the same statute. To fairly apportion it. If everyone has that same statute. But states that continue to have the three-factor formula would apportion under the three-factor formula. Illinois is apportioned under a single factor revenue. There are states that do single factor sales formulas. And in Northwest, the court acknowledged that you don't always get 100% apportionment. No, and I indicated that earlier. But the idea behind this apportionment is to try to tax at 100% so that everything, all the business that is conducted is being taxed to the portion that is conducted in a particular state, being Illinois here. If each state would adopt the same statute. You're talking about other states. What is the purpose of the Illinois Income Tax Act? And do you think that GTE was misstating it or was only stating it for a particular tax? It's not a general principle? I think GTE was stating it for the three-factor formula, which was generally applicable in that time period for companies filing in many states. I think that the general assembly can tax 100%, but they do not have to tax 100%. Would you say that the intent behind both of these pieces of legislation, the former statute and now the current one, that there is no intent to tax at 100%, to apportion the tax at 100%? I think it was achieved by the amendments to the statute. But the other one didn't have that same intent? I don't think it did. I just don't think it covered it, the plain reading and the amendments. I just think that the amendments themselves demonstrate that there is a change. They're looking for receipts that pass through the state. They're looking at items that originate in the state, in another state, and terminate in another state. And, again, the language isn't pass-through. It's in. Revenue miles in the state. But for the years at issue, Your Honor. Yes. I was speaking about the amendment. The First Amendment in 2007 spoke about passing through, into, or out of the state. Yes. But we actually have to look at the original statute, not the amendments. True? First, we look at the language. And if it's not ambiguous, we don't really go any further than that, do we? Well, I think in the Northwest case, the court did construe the statute. And so I would put that. Construed the statute or was looking at whether the statute or whether those facts would violate the Commerce Clause? Well, I think both. Both? All right. Now, we're not looking at the trial judge's decision, are we? That is correct, Your Honor. And would you agree we're reviewing this de novo? I would agree we're reviewing it de novo. Do we give any deference to the department who is in charge of interpreting its own? I think the case law says they get some deference, but not substantial deference. Yes. Not substantial deference. And I believe the Northwest case says as much. Anything further? Do you want to talk about the Commerce Clause? Let's just touch upon the nexus. There are two kinds of nexus. There's nexus over the person, which we can see we have. Pipeline companies are here. The compressors are here. The people are here. And there's nexus over the transaction itself. And that is what the Northwest Court was looking to. Is there a nexus over the transaction? There was no question the airlines were in the state doing business, themselves physically present. But there was not enough of a nexus over the transactions. And in that case, the Court said they're not putting a limit. They're just saying under those facts, there's absolutely no connections. And we've cited two cases.  Sweet case I think is an important case out of the U.S. Supreme Court holding that certain types of telecommunications could be subject to tax where the call either originates or terminates in the state and is billed to a service address. But the Court says in that case the reason for that is that it doubts whether or not a state through which the electrons merely pass could subject that call to tax. And here we have molecules passing through a pipeline. I think that is similar. And although, yes, we have compressors, we have people here, I think the telephone company has people, has cables, has everything else in those states as well. How did those electrons move through? I'm not an electrical engineer, Your Honor. You're using it as a comparison. You're asking us to analogize it. Correct. So I'm asking you the question of really what you're saying. Are you saying the neutrons are the same as the molecules that had to be forced through the state using the compressors of the pipeline companies? I mean, you're making the comparison. Yes, Your Honor. So that's why I'm asking you the question. I'm certainly not the, you know, chemical engineer. So I'm asking you because you've compared neutrons or electrons, rather, I misspoke, to molecules in the natural gas. The electrons are being pushed through. How? Through the machinery of the telecommunications company. Okay. And so I view those as to be the same as well. And so, in conclusion, I do believe that the statutory change is a significant change, and it's not just grocery seats from revenue miles, that if that was the only change, you could have just changed the original statute so the numerator is grocery seats in this state and the denominator is grocery seats everywhere. But the legislature chose not to do that, and twice they chose not to do that. And we also think the Commerce Clause does preclude taxation and inclusion in the numerator of these sales. Thank you. Thank you. Mr. Fields? Wunder? Brief follow-up? Counselor referred to this concept of substantial nexus and whether that's satisfied here. It's satisfied here because you're really looking at whether you're looking at the taxpayers' income-producing activities in Illinois, all those connections we talked about, and those connections apply in the same way for the flow-through trips as well as for trips that might start and end in Illinois. So you're really looking at does Illinois, the question for substantial nexus is really whether Illinois contributes to the taxpayers' production of income. That's your substantial nexus question here, and the answer is yes. They refer to this case called Goldberg, that nothing in Goldberg helps them establish that there is not substantial nexus here in connection with the flow-through miles. Goldberg is actually not deciding substantial nexus questions, a fair apportionment case, and it's looking at whether it's upholding basically a sales tax on a consumer's purchase of a phone call. There's a bit of dicta in the case that perhaps these electronic pathways that are traveled by the signals, the pathway that's traveled by the electronic signals that eventually become the phone call might lack a substantial nexus to state it passes through for the purposes of taxing the purchase of the phone call. What the court's looking at, and so it's different right there, it's looking at the purchase of the phone call, not income-producing activity. It's a different tax. It's a sales tax. Those are treated differently. But also what the court's looking at and saying, well, there might not be a nexus here, is the fact that there were billions of potential pathways. It was impossible to trace where these electronic signals might go. They're really too ephemeral and insubstantial in any way to create some type of nexus, and that's a very different situation here where the taxpayer has this they need the operations in state to move the gas. They have these substantial staffs, so it's a very different situation than these ephemeral electronic signals. Taxpayer has also said, well, if the only change in the amended statute was switching to this gross receipt system, well, why didn't they just say gross receipts in the state versus gross receipts everywhere, and I think that that illustrates my point. They didn't because when you're talking about gross receipts, what does a gross receipt in the state mean? It doesn't have this geographical measure, and that's why they specifically referred to intrastate trips and interstate trips and gave a little more guidance on what we mean when we're going to consider a gross receipt in the state. They didn't need to do that with the revenue mile system because a mile is a geographic measure. So you get the same, you're including the same bundles of things essentially under both systems. They just included the more specific language in the amendments where they didn't need to do that with the revenue miles because you got the same things. Counsel suggested that the Northwest Court said that, well, passing over, passing through, it's all the same thing, but that's not what was occurring in that case. The court there was not looking at whether these airlines are passing over per se. It was really looking at whether there's any meaningful connection between those flyover miles and Illinois, and there was not in that case. But here there is for all the reasons we've discussed. There are these substantial connections because of these extensive in-state activities which are brought to bear in the case of the flow-through miles. So the court wasn't in Northwest Airlines, wasn't making any general pronouncements about something passing through can never, or over or through, whatever, can never be a substantial nexus. And lastly, the court asked about this goal of substantial apportionment. That is a goal. I think the GTE illustrates that that's a goal in these circumstances as well because the Northwest Airlines court notes GTE and says, yes, we recognize there's this goal. And Northwest Airlines, of course, does deal with transportation companies and is really applying the same statutory scheme here. So you do have that same goal of 100% apportionment. Less than 100% apportionment might occur where, you know, there's a state that doesn't adopt an income tax at all or where a state exempts a particular class of taxpayers. So you might wind up with less than 100% apportionment in specific situations, but it's still a goal. As to the standard review, we're essentially agreed that it's a de novo standard and that some deference should be accorded to the department's decision. There are cases that describe this substantial deference, and I think the court will give the deference it considers due. Thank you. For those reasons and the briefs, we ask that the court reinstate the director's decision. All right. The case was well argued and well briefed, and it will be taken under advice. And that concludes our forums today.